IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Stephanie Smith,                  :

    Plaintiff,              :      Case No. 2:07-cv-144
  v.                                    MAGISTRATE JUDGE KEMP
                              :

CallTech Communications, LLC      :

    Defendant.              :

OPINION AND ORDER

    Plaintiff Stephanie Smith brought this action for damages resulting from the termination of her employment by defendant CallTech Communications, Inc.  Ms. Smith's first amended complaint included four claims for relief.  On March 17, 2008, the parties stipulated to a dismissal of Ms. Smith's gender discrimination claims under both Title VII and Ohio Rev. Code §4112.01 et seq.  The two remaining claims consist of Ms. Smith's allegations that CallTech wrongfully discharged her in violation of the Family and Medical Leave Act, 29 U.S.C. §2601 et seq., and Ohio public policy.

    Calltech has moved for summary judgment on both the FMLA and the public policy claims.  Ms. Smith has moved for partial summary judgment on liability alone on her FMLA claim.  This Opinion and Order will resolve these cross-motions for summary judgment.

I.

    Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the

moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

    Here, the parties have filed cross-motions for summary judgment.  Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that the party is entitled to a judgment as a matter of law. The fact that one party fails to satisfy this burden on that party's own Rule 56 motion does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion.  In reviewing cross-motions for summary judgment, courts should "evaluate each

motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party." <u>Wiley v. United States</u>, 20 F.3d 222, 224 (6th Cir.1994).  "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." <u>Taft</u> <u>Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th Cir.1991) (citations omitted).  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. <u>Id</u>.  It is with these standards in mind that the instant motions must be decided.

## II.

Ms. Smith was employed at CallTech from February 14, 2005, to May 31, 2006.  Both before and throughout her employment at CallTech, she was diagnosed as suffering from chronic major depressive disorder and dysthymic disorder.  During her employment at CallTech, Ms. Smith, on numerous occasions, showed up tardy, left work before her shift was over, and missed entire shifts.  The ostensible reason for her absences was her medical condition.

On January 31, 2006, Ms. Smith submitted to her employer a CallTech Family/Medical Leave Form and a Certification of Health Care Provider that had been completed by her physician.  CallTech processed these forms and subsequently designated Ms. Smith as eligible for intermittent leave under the FMLA for her chronic depression and dysthymic disorder.  This eligibility designation was effective from January 31, 2006, to January 30, 2007.

Throughout the period of Ms. Smith's employment, CallTech utilized an Employee Action Form point system that governed not only employee attendance, but other infractions and performance

related issues. An employee is electronically notified each time an infraction occurs, even when the infraction is so minor as to result in the assessment of only a quarter point. Employees can view their point totals from a CallTech computer on their individual profiles which are maintained in conjunction with CallTech's Call Center Management System. Once an employee accumulates four points, she automatically receives a written notification. When an employee reaches the five point level, a written warning issues, advising the employee that if she accumulates a total of six points, her employment is subject to termination. Employees can dispute any given infraction by going to their supervisor or manager and asking that the corresponding point or points be removed.

During her employment, Ms. Smith apparently received EAF points only for her attendance issues and not for any other reasons. When Ms. Smith was going to be late or miss an entire shift, she would telephone CallTech's automatic call-off line and input her employee number. The automated system would then ask her to indicate whether she was requesting a tardy, a whole-shift absence, or bereavement leave. The system did not allow her to provide any further explanation. Ms. Smith would then report to her supervisor the reason for her tardiness or absence at the next opportunity. Whenever she felt forced to leave her shift early, Ms. Smith would contact her supervisor and inform him of the reason why she was leaving. Her supervisor's shift did not always overlap hers. On those occasions where she left early and her supervisor was not there, she would simply log off her telephone and leave per instructions from CallTech's human resources department. Similarly, if her supervisor was not on duty when she came in tardy, she would simply log on.

An employee's work schedule is entered into CallTech's Center Management System. If the employee does not show up for

work as scheduled, the CCMS will automatically process an EAF infraction.  During her employment at CallTech, Ms. Smith received notifications whenever she accumulated four points and written warnings when she reached the five point level.  She also received notification more than once that she had accrued six points.  Ms. Smith was aware that points could be taken off manually if she brought in a doctor's excuse for her FMLA related absences and that some types of points would fall off automatically after a certain amount of time.

   On May 28, 2006, Ms. Smith was called in for a meeting with her supervisor, Sean Chester, and her manager, Michael Day.  They informed her that her point total was 6.75 as of that date, which was in excess of the six point level triggering termination.  According to Ms. Smith's affidavit, these 6.75 points were accumulated as the result of sick days, early departures, and tardies that occurred between March 27, 2006, and May 16, 2006.  Mr. Chester and Mr. Day instructed her that in order to avoid being terminated, she would have to reduce her point level to below six no later than May 31, 2006.  Ms. Smith could accomplish the necessary reduction only by providing a doctor's verification that at least some of her absences were the result of her medical condition.  Ms. Smith told her supervisor and manager that she would not be able to obtain a doctor's appointment prior to May 31, 2006, but they reiterated that she would need to have the doctor's note or notes in by this deadline or face termination.  Mr. Chester followed up this meeting with an email to Ms. Smith summarizing what had been said with respect to her point total and restating that termination was imminent if she was unable to get below six points.  Ms. Smith became despondent and did not believe she could withstand being terminated in person.  She, therefore, stopped reporting to work on May 31, 2006.

5

III.

The FMLA entitles an eligible employee to take up to twelve weeks of leave during any 12-month period for a variety of reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." Arban v. West Pub. Corp., 345 F.3d 390, 400 (6th Cir. 2003)(quoting 29 U.S.C. §2612(a)(1)(D)).  It is uncontroverted that CallTech is a covered employer under the FMLA and that Ms. Smith's chronic major depressive disorder and dysthymic disorder are serious health conditions under the statute.  See 29 U.S.C. §2611(11)("The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves...continuing care by a health care provider").

Under 29 U.S.C. §2615, a covered employer is prohibited both from interfering with, restraining, or denying the exercise of their employees' rights to family or medical leave and from discharging or otherwise retaliating or discriminating against such employees for opposing unlawful practices under the FMLA. Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006). Thus, there are two distinct theories for recovery on FMLA claims: (1) the "entitlement" or "interference" theory and (2) the "retaliation" or "discrimination" theory.  Arban, 345 F.3d at 400-01.

Although CallTech read the complaint as alleging the retaliation or discrimination type of claim, Ms. Smith states unequivocally that she is proceeding solely on a claim of interference and restraint.  See Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (#39) at 2. An employer who violates §2615 is liable for damages and appropriate equitable relief under §2617 only where the employee has suffered harm as the consequence of the violation, and the remedy must conform to the resulting injury.  See Cavin v. Honda

of America Mfg., Inc., 346 F.3d 713, 726 (6th Cir. 2003)(citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 88-90 2002)).

To prevail on an FMLA entitlement or interference claim, a plaintiff must establish that (1) she is an eligible employee; (2) the defendant is a covered employer; (3) the employee was entitled to leave under the FMLA; (4) the employee provided notice of her intention to take leave; and (5) the employer denied the employee benefits to which she was entitled. Id. at 719; Saroli v. Automation & Modular Components, Inc., 405 F.3d 446, 454 (6th Cir. 2005). CallTech concedes that Ms. Smith has satisfied the first four elements of her interference claim. See Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (#40) at p. 1. CallTech, however, disputes that it denied Ms. Smith FMLA leave or other benefits to which she was allegedly entitled.

At issue is CallTech's FMLA intermittent leave policy of requiring a note from a physician verifying that every instance of absence, tardiness or early departure was directly related to the employee's medical condition that is on file. Under this policy, an employee eligible for intermittent leave was not actually required to see a doctor each time leave was taken; the doctor could go back and verify several absences in a single note. In the event that points had been assessed for an FMLA-related absence prior to receipt of the doctor's verification, CallTech would remove those points once such documentation was received.

CallTech argues that not only does its attendance policy not violate the FMLA, but that it has a duty under the implementing regulations to investigate and verify that leave is or is not FMLA-qualifying. See 29 C.F.R. §825.303(b)(where need for FMLA leave is not foreseeable, once employee furnishes notice after

7

learning of need for leave, employer is expected to obtain any additional required information) and 29 C.F.R. §825.305(c) (employer should request that an employee provide certification from a health care provider at the time employee gives notice of need for leave); see also Manns v. ArvinMeritor, Inc., 291 F.Supp.2d 655, 659-60 (N.D. Ohio 2003). CallTech maintains, however, that despite its reliance on Manns, the requirements established in §825.305 for certification or re-certification do not apply here because CallTech requires only a doctor's note for the dates an employee entitled to intermittent FMLA leave is absent, and not the detailed medical information called for under 29 C.F.R. §825.306.

Ms. Smith argues that CallTech's demands for verification that her absences were related to her FMLA-qualified condition constituted requests for medical re-certification subject to the procedural requirements set forth in §825.305. Under these regulatory criteria, a request for medical certification must provide the affected employee with the time frame to respond, and this time frame cannot be less than 15 days from the date of the request. See §825.305(b). The request must also detail the potential consequences to the employee for non-compliance. See §825.305(d). Ms. Smith contends that May 28, 2006, was the first day on which CallTech made its request for certification and notified her that she would be terminated if she failed to comply. In her view, this request was unlawful because it allowed her only three days to respond rather than fifteen.

CallTech does not cite to any case law to support its contention that §825.305 is inapplicable here, and the Court at this stage of the proceedings will assume that this regulatory provision does apply. Just as a violation of the FMLA itself is actionable, a violation of §825.305(b) may entitle an employee to damages. See 29 C.F.R. §825.220(b)("[a]ny violations of the Act

8

or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act."); see also Bradley v. Mary Rutan Hosp. Assoc., 322 F.Supp.2d 926, 937 (S.D. Ohio 2004)(employer violates FMLA when it violates either the FMLA statute itself or its implementing regulations).

In Brock v. United Grinding Technologies, Inc., 257 F.Supp.2d 1089 (S.D. Ohio 2003), Judge Rice considered a similar factual scenario. He found that the employer's request for a doctor's note did not have to comply with the medical certification requirements in §825.305 because the plaintiff failed to inform his employer upon his return to work that his absences were due to his FMLA-qualified condition. Id. at 1101-04. In contrast, Ms. Smith states in her affidavit that, with respect to each whole-shift absence, she informed her supervisor and/or her manager that the reason for that absence was FMLA-related. For each partial day absence, she similarly informed her supervisor (but not her manager) that the absence was FMLA-related, except on those occasions when her supervisor was not present at the time she came in tardy or left early. Accordingly, unlike the plaintiff in Brock, Ms. Smith has created a genuine issue of material fact that CallTech interfered with her FMLA rights when it demanded that she bring in a doctor's note within three days or face termination. See Chenoweth v. Wal-Mart Stores, Inc., 159 F.Supp.2d 1032, 1038 (S.D. Ohio 2001)(genuine issue of material fact existed as to whether employee was given ample time under FMLA to return medical certification). Under §825.305(b), an employer must allow at least 15 calendar days after its request for the employee to provide the medical certification. The fact that Ms. Smith was aware that she needed to provide a doctor's note for her FMLA absences according to CallTech's attendance policies did not excuse CallTech's failure to comply with this requirement. See Marrero v. Camden County

9

Bd. of Social Services, 164 F.Supp.2d 455, 466 (D.N.J. 2001)(even if policies in employee handbook were sufficient to inform plaintiff that a doctor's certification would be required, defendants were still required to inform plaintiff she had fifteen days to provide certification). A "no fault" attendance policy, such as the one utilized by CallTech in this case, must except absences due to a serious health condition for which an employee has been qualified under the FMLA, and an employer may not consider such absences in deciding whether to terminate its employee for excessive absenteeism. See id.; see also Cavin, 346 F.3d at 726 (termination based in part on absence covered by FMLA, although combined with other non-FMLA absences, still violates FMLA).

The fact that CallTech failed to comply with §825.305(b) does not, however, by itself entitle Ms. Smith to summary judgment on her FMLA interference claim. If CallTech can show that it would have terminated Ms. Smith regardless of her FMLA-related absences, its violation of §825.305(b) would not result in any liability. See Arban, 345 F.3d at 401; Edgar, 443 F.3d at 507-08. In this regard, CallTech maintains that Ms. Smith had a history of attendance problems that predated her FMLA submission of January 31, 2006. In fact, according to CallTech's attendance records, Ms. Smith had accumulated 13.75 points as of February 19, 2006, with as few as 3 of these points attributable to her FMLA-qualifying condition. Since an employee is subject to termination at a level of six points, a genuine issue of material fact exists with respect to whether Ms. Smith was terminated for absences covered by the FMLA.

There is also a genuine issue of material fact concerning whether CallTech terminated Ms. Smith's employment or whether she abandoned her position. See Hammond v. DHL Airways, Inc., 165 F.3d 441, 448 (6th Cir. 1999). It is undisputed that Ms. Smith

10

stopped reporting for work altogether on May 31, 2006. Ms. Smith contends that CallTech constructively discharged her on or about that date because she "reasonably knew she could not comply with her supervisors' unlawful request for 'verification' by the end of the month, and that her disciplinary points would therefore remain above the level that demanded termination." Plaintiff's Motion for Partial Summary Judgment p. 12. Constructive discharge, if established, may form the basis of an FMLA interference claim. See Harcourt v. Cincinnat Bell Telephone Co., 383 F.Supp.2d 944, 963 (S.D. Ohio 2005)(citing Saroli, 405 F.3d at 451). A claim of constructive discharge, however, involves a factual inquiry into an employer's intent. See Talley v. Family Dollar Stores of Ohio, Inc., _ F.3d _, 2008 WL 4163223 at *5 (6th Cir. Sep. 11, 2008). Because CallTech did not terminate Ms. Smith on at least one other occasion when her point total exceeded six, it was not a foregone conclusion that she would be fired on May 31, 2006.

IV.

CallTech also seeks summary judgment on Ms. Smith's claim that she was wrongfully discharged in violation of Ohio public policy. Ms. Smith alleges that "[t]he State of Ohio has a clear public policy against constructive discharge of an employee through deliberate failure to provide a safe workplace for the individual employee." Amended Complaint ¶33. She further alleges that the discharge of an employee under the circumstances of this case would jeopardize this public policy. Amended Complaint ¶34. Next, she asserts that the motivating factor in CallTech's decision to discharge her was its opposition to and disregard for this public policy. Amended Complaint ¶35. Lastly, she claims that CallTech did not have any overriding business justification for constructively discharging her. Amended Complaint ¶36.

11

In <u>Greeley v. Miami Valley Maintenance Contractors, Inc.</u>, 551 N.E.2d 981 (Ohio 1990), the Supreme Court of Ohio recognized a public policy exception to the employment-at-will doctrine. Although <u>Greeley</u> limited its holding to employees discharged in violation of a statute, the Ohio Supreme Court later expanded this cause of action to encompass discharges in violation of the federal and state constitutions, administrative rules and regulations, and the common law so long as "the public policy alleged to have been violated is of equally serious import as the violation of a statute." <u>Painter v. Graley</u>, 639 N.E.2d 51, 56 (Ohio 1994).  To prevail on a <u>Greeley</u> claim, a plaintiff must show:

   1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

   2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

   3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

   4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

<u>Id</u>.(quoting Henry H. Perritt, <u>The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?</u>, 58 U.Cin.L.Rev. 397, 398-99 (1989)).

Ms. Smith has failed to come forward with evidence to satisfy any of the factors necessary to establish a <u>Greeley</u> claim.  Because Ms. Smith bears the burden of proving the elements of such a claim by a preponderance of the evidence, <u>see</u> <u>Marcuso v. Univ. of Cincinnati</u>, 779 N.E.2d 794, 798-99 (Ohio Ct. App. 2002), it was incumbent upon her to set out specific facts

showing a genuine issue for trial.  Her failure to do so requires this Court to grant summary judgment in favor of CallTech.  See Fed. R. Civ. P. 56(e)(2).  Furthermore, to the extent that Ms. Smith alleges that she was wrongfully discharged in violation of the public policy embodied in the FMLA, as CallTech seems to believe, Ohio does not recognize such an exception to the employment-at-will doctrine.  See Cavin, 346 F.3d at 727(citing Wiles v. Medina Auto Parts, 773 N.E.2d 526, 528 (Ohio 2002).

V.

Based on the foregoing reasons, CallTech's motion for summary judgment (#30) is granted in part and denied in part.  Ms. Smith's motion for partial summary judgment on liability only on her FMLA claim (#31) is denied.  Summary judgment is entered in favor of CallTech on Count III of the amended complaint.  Count I of the amended complaint shall proceed to trial.


/s/ Terence P. Kemp
United States Magistrate Judge