IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Stephanie Smith,                :

    Plaintiff,              :    Case No. 2:07-cv-144
  v.                              MAGISTRATE JUDGE KEMP
                                :

CallTech Communications, LLC    :

    Defendant.              :

OPINION AND ORDER

    Plaintiff Stephanie Smith brought this action for damages resulting from the termination of her employment by defendant CallTech Communications, Inc. Ms. Smith's first amended complaint included four claims for relief. On March 17, 2008, the parties stipulated to a dismissal of Ms. Smith's gender discrimination claims under both Title VII and Ohio Rev. Code §4112.01 et seq. Following this stipulation, the two remaining claims consisted of Ms. Smith's allegations that CallTech wrongfully discharged her in violation of the Family and Medical Leave Act, 29 U.S.C. §2601 et seq., and Ohio public policy.

    On July 28, 2008, Calltech filed a motion for summary judgment on both the FMLA and the public policy claims, and Ms. Smith moved for partial summary judgment on liability alone as to her FMLA claim. On October 3, 2008, the Court granted summary judgment to CallTech on the public policy claim. The Court, however, found that genuine issues of material fact existed with respect to CallTech's liability under the FMLA and denied the parties' cross-motions for summary judgment on that claim. At issue was CallTech's requirement that an employee who qualifies for intermittent leave under the FMLA provide a physician's note verifying that every instance of absence, tardiness, or early

departure is directly related to the employee's medical condition on file.  The Court assumed for purposes of the parties' motions, but did not conclusively determine, that each demand that Ms. Smith provide such a note constituted a request for medical recertification subject to certain procedural safeguards under the applicable federal regulations.  Trial of the FMLA claim was set for March 23, 2009, and the case was assigned to a mediator for a settlement conference to be held on March 9, 2009.

At the parties' request, the Court conducted a status conference on March 3, 2009.  Counsel for the parties represented that settlement negotiations would likely be futile until the Court determined as a matter of law whether or not CallTech's verification policy as applied to Ms. Smith violated the FMLA.  It was therefore agreed that the parties would brief this issue.  Meanwhile, both the trial and the settlement week conference were vacated.

On March 27, 2009, Ms. Smith filed a supplemental memorandum in support of her contention that CallTech's verification system violated the FMLA and was the basis for her termination.  On that same date, CallTech filed a second motion for summary judgment which addressed its right, in accordance with the FMLA, to verify Ms. Smith's absences from work after she was granted intermittent leave.  On April 10, 2009, CallTech and Ms. Smith each responded to the other's memorandum.  Accordingly, the issue is now fully briefed and ready for decision.

I.

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.

Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

The parties have filed what amount to cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that the party is entitled to a judgment as a matter of law. The fact that one party fails to satisfy this burden on that party's own Rule 56 motion does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts

and inferences in the light more favorable to the non-moving party." Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991) (citations omitted). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. Id. It is with these standards in mind that the instant motions must be decided.

II.

Ms. Smith was employed at CallTech from February 14, 2005, to May 31, 2006. Both before and throughout her employment at CallTech, she was diagnosed as suffering from chronic major depressive disorder and dysthymic disorder. During her employment at CallTech, Ms. Smith, on numerous occasions, showed up tardy, left work before her shift was over, and missed entire shifts. The ostensible reason for her absences was her medical condition.

On January 31, 2006, Ms. Smith submitted to her employer a CallTech Family/Medical Leave Form and a Certification of Health Care Provider that had been completed by her physician. CallTech processed these forms and subsequently designated Ms. Smith as eligible for intermittent leave under the FMLA for her chronic depression and dysthymic disorder. This eligibility designation was effective from January 31, 2006, to January 30, 2007.

Throughout the period of Ms. Smith's employment, CallTech utilized an Employee Action Form point system that governed not only employee attendance, but other infractions and performance related issues. An employee is electronically notified each time

an infraction occurs, even when the infraction is so minor as to result in the assessment of only a quarter point. Employees can view their point totals from a CallTech computer on their individual profiles which are maintained in conjunction with CallTech's Call Center Management System. Once an employee accumulates four points, she automatically receives a written notification. When an employee reaches the five point level, a written warning issues, advising the employee that if she accumulates a total of six points, her employment is subject to termination. Employees can dispute any given infraction by going to their supervisor or manager and asking that the corresponding point or points be removed.

During her employment, Ms. Smith apparently received EAF points only for her attendance issues and not for any other reasons. When Ms. Smith was going to be late or miss an entire shift, she would telephone CallTech's automatic call-off line and input her employee number. The automated system would then ask her to indicate whether she was requesting a tardy, a whole-shift absence, or bereavement leave. The system did not allow her to provide any further explanation. Ms. Smith would then report to her supervisor the reason for her tardiness or absence at the next opportunity. Whenever she felt forced to leave her shift early, Ms. Smith would contact her supervisor and inform him of the reason why she was leaving. Her supervisor's shift did not always overlap hers. On those occasions where she left early and her supervisor was not there, she would simply log off her telephone and leave per instructions from CallTech's human resources department. Similarly, if her supervisor was not on duty when she came in tardy, she would simply log on.

An employee's work schedule is entered into CallTech's Center Management System. If the employee does not show up for work as scheduled, the CCMS will automatically process an EAF

infraction. During her employment at CallTech, Ms. Smith received notifications whenever she accumulated four points and written warnings when she reached the five point level. She also received notification more than once that she had accrued six points. Ms. Smith was aware that points could be taken off manually if she brought in a doctor's excuse for her FMLA related absences and that some types of points would fall off automatically after a certain amount of time.

On May 28, 2006, Ms. Smith was called in for a meeting with her supervisor, Sean Chester, and her manager, Michael Day. They informed her that her point total was 6.75 as of that date, which was in excess of the six point level triggering termination. According to Ms. Smith's affidavit, these 6.75 points were accumulated as the result of sick days, early departures, and tardies that occurred between March 27, 2006, and May 16, 2006. Mr. Chester and Mr. Day instructed her that in order to avoid being terminated, she would have to reduce her point level to below six no later than May 31, 2006. Ms. Smith could accomplish the necessary reduction only by providing a doctor's verification that at least some of her absences were the result of her medical condition. Ms. Smith told her supervisor and manager that she would not be able to obtain a doctor's appointment prior to May 31, 2006, but they reiterated that she would need to have the doctor's note or notes in by this deadline or face termination. Mr. Chester followed up this meeting with an email to Ms. Smith summarizing what had been said with respect to her point total and restating that termination was imminent if she was unable to get below six points. Ms. Smith became despondent and did not believe she could withstand being terminated in person. She stopped reporting to work on May 31, 2006.

### III.

The FMLA entitles an eligible employee to take up to twelve

weeks of leave during any 12-month period for a variety of reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." Arban v. West Pub. Corp., 345 F.3d 390, 400 (6th Cir. 2003)(quoting 29 U.S.C. §2612(a)(1)(D)). It is uncontroverted that CallTech is a covered employer under the FMLA and that Ms. Smith's chronic major depressive disorder and dysthymic disorder are serious health conditions under the statute. See 29 U.S.C. §2611(11)("The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves...continuing care by a health care provider").

Under 29 U.S.C. §2615, a covered employer is prohibited both from interfering with, restraining, or denying the exercise of its employees' rights to family or medical leave and from discharging or otherwise retaliating or discriminating against such employees for opposing unlawful practices under the FMLA. Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006). Thus, there are two distinct theories for recovery on FMLA claims: (1) the "entitlement" or "interference" theory and (2) the "retaliation" or "discrimination" theory. Arban, 345 F.3d at 400-01.

Ms. Smith does not maintain that CallTech discriminated or retaliated against her. She is proceeding solely under a theory of interference and restraint. To prevail on an FMLA entitlement or interference claim, a plaintiff must establish that (1) she is an eligible employee; (2) the defendant is a covered employer; (3) the employee was entitled to leave under the FMLA; (4) the employee provided notice of her intention to take leave; and (5) the employer denied the employee benefits to which she was entitled. Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003); Saroli v. Automation & Modular Components, Inc., 405 F.3d 446, 454 (6th Cir. 2005). It is undisputed that

7

Ms. Smith satisfies the first four elements of her interference claim. The parties disagree, however, on whether CallTech's verification policy, as applied to Ms. Smith, denied her FMLA leave or other benefits to which she was entitled.

As previously noted, CallTech's attendance policy, as applied to FMLA intermittent leave, requires a note from a physician verifying that every instance of absence, tardiness or early departure is directly related to the employee's medical condition on file. Under this policy, an employee approved for intermittent leave is not actually required to see a doctor each time leave is taken; the doctor can go back and verify several absences in a single note. In the event that points have been assessed for an FMLA-related absence prior to receipt of the doctor's verification, CallTech will remove those points once such documentation is received.

CallTech argues that not only does its attendance policy, as applied, not violate the FMLA, but that it has a duty under the implementing regulations to investigate and verify that leave is or is not FMLA-qualifying. See Manns v. ArvinMeritor, Inc., 291 F.Supp.2d 655, 659-60, 662 (N.D. Ohio 2003). In recognizing that duty, the district court in Manns cited both to 29 C.F.R. §825.303(b)(once employer is on notice of need for leave, employer is expected to obtain from the employee any additional information required to confirm that leave complies with FMLA) and §825.305(c)(once employee gives notice of need for leave, employer should in most cases request that employee furnish certification from health care provider). CallTech maintains that even though the district court in Manns expressly refers to §825.305, that court's use of the term "verification" rather than "certification" implies something different than the medical certification procedures outlined in that regulation.

If CallTech's demands for one or more doctor's notes are

8

regarded as requests for medical recertification, they would be subject to the procedural requirements set forth in §825.305. Under these regulatory criteria, a request for medical certification or recertification must provide the affected employee with the time frame to respond, and this time frame cannot be less than 15 days from the date of the request. See §825.305(b). The request must also detail the potential consequences to the employee for non-compliance. See §825.305(d). CallTech, however, believes that it is not bound by these procedural requirements because it demands only a doctor's note verifying that the absences were, in fact, related to the employee's approved FMLA condition, rather than the detailed medical information called for under 29 C.F.R. §825.306.

In McClain v. Detroit Entertainment, L.L.C., 458 F.Supp.2d 427 (E.D. Mich. 2006), the district court examined a similar argument. The defendant in that case sought assurance from the plaintiff's physician that her recent absences were pregnancy-related and therefore covered by her previously approved intermittent FMLA leave. Judge Rosen noted that so far as his legal research revealed, the FMLA and its implementing regulations do not address this particular point. Id. at 436. It seemed evident to Judge Rosen, however, that the employer must both notify the employee of this demand for verification and provide the employee with sufficient time and opportunity to comply. Id. In his view, the regulation governing recertification is instructive in this regard. Id. Under 29 C.F.R. §825.308(d), an employer "must allow at least 15 calendar days" for an employee to comply with a requested recertification. The defendant's attendance policy lacked this requisite degree of latitude as applied to McClain. Id. at 437. She was informed of the need for some form of verification from her doctor on January 27, 2004, and then discharged less than a week later. The court

9

concluded that her discharge appeared to have violated the FMLA regulation that an employee be granted fifteen days to obtain a requested medical recertification.  Id.

The issue was also raised in Brock v. United Grinding Technologies, Inc., 257 F.Supp.2d 1089 (S.D. Ohio 2003). There, the plaintiff argued that his employer's request for a doctor's note upon his return to work constituted a request for certification that his leave was necessitated by a serious health condition.  The plaintiff had previously taken short-term disability leave for treatment of stress, situational anxiety, and depression.  During that time, his employer had recorded his absences as family care leave.  After returning to work following short-term disability leave, the plaintiff continued to experience attendance problems.  His supervisor met with him, gave him a written warning, and informed him he would need to have a doctor's excuse for any absences that occurred during the remainder of that year.  A few months later, Brock left a voice-mail message for his supervisor that he was sick and would not be in that day.  His supervisor called him back that day and told him he would need a doctor's excuse when he returned.  When Brock reported the next day without a doctor's excuse, he was terminated.  In the message to his supervisor, Brock had stated only that he was "sick" and did not indicate he intended to use FMLA leave.  Because his employer was not on notice that this absence was due to an FMLA qualifying condition, Judge Rice questioned whether 29 C.F.R. §825.305(b) applied.  He found that, instead of §825.305(b), the relevant regulatory provision was former §825.208 which provided that in the absence of timely notification by the employee that leave was taken for an FMLA reason, the employee could not subsequently assert FMLA protections for his absence. Id. at 1101-04.

The recertification issue was also raised in Geromanos v.

Columbia Univ., 322 F.Supp.2d 420, 431 (S.D.N.Y. 2004). In that case, the plaintiff argued that her employer's requirement that she submit weekly progress reports concerning her out-patient substance abuse treatment during the time she was on paid FMLA leave interfered with her rights under the FMLA. The plaintiff based this argument on her assertion that such progress reports constituted medical certifications which, under §825.308, could be requested only once every thirty days. The court noted that although "[t]he case law regarding recertifications [was] sparse," the plaintiff had found at least one case in support of her contention. Id. at 431 (citing LeGrand v. Village of McCook, No. 96 Civ. 5951, 1998 WL 182462 (N.D. Ill. April 15, 1998)). Geromanos's situation, however, was different. Her employer was not asking her to certify on a weekly basis that she continued to suffer from an FMLA-qualifying condition as a requisite for allowing her to remain on FMLA leave. Id. at 431-32. The employer simply wanted assurances that Geromanos was complying with the terms of her paid leave of absence by undergoing treatment for that condition. Since an employer is not required under the FMLA to provide paid leave, it can impose whatever restrictions it chooses in exchange for paying the salary of an employee who is on leave without running afoul of the statute. Id. at 432.

    The Court finds the situation in McClain more analogous to Ms. Smith's circumstances than either of the other two cases. In contrast to the defendant in Brock, CallTech was on notice that the absences were related to Ms. Smith's depression, a condition for which FMLA intermittent leave already had been approved. Ms. Smith states in her affidavit that, with respect to each whole-shift absence, she informed her supervisor and/or her manager that the reason for that absence was FMLA-related. For each partial day absence, she similarly informed her supervisor (but

11

not her manager) that the absence was FMLA-related, except on those occasions when her supervisor was not present at the time she came in tardy or left early. Moreover, unlike the purpose behind the weekly reporting requirements in Geromanos, the reason for CallTech's requiring a doctor's note was to verify that Ms. Smith's absences were FMLA-related and not simply "take an employee's word" that the reason for the absences related to the allowed condition.

Under 29 C.F.R. §825.301(a), an employer is responsible for designating an employee's leave as FMLA-qualifying or not. This designation must be based only upon information from the employee unless the employee is incapacitated. The employee must explain the reason for the leave in order to permit the employer to make such a determination. See §825.301(b). If the employer and employee dispute whether leaves qualifies as FMLA leave, the dispute should be resolved through documented discussions between the employer and employee. See §825.301(c). An employer may require that an employee's request for FMLA leave be supported by a certification or recertification from the employee's health care provider. See §825.305(a), §825.308. To the extent the employer demands it, an employee must provide a complete and sufficient certification (or recertification) which contains the information outlined in §825.306. See §825.305(c), §825.308(e). The employee has 15 calendar days to respond to the request unless it is impracticable to do so or the employer provides more time. See §825.305(b), §825.308(d).

As noted, the employer can fix a time frame more generous than 15 days or dispense with any of the certification or recertification requirements altogether. See Rager v. Dade Behring, Inc., 210 F.3d 776, 777 (7th Cir. 2000). What an employer may not do, however, is to impose a requirement more stringent than the FMLA or its implementing regulations, and then

12

terminate its employee for failing to meet that requirement. See Harrigan v. Dana Corp., – F.Supp.2d –, 2009 WL 891756 at *7 (N.D. Ohio Mar. 31, 2009); Maynard v. Total Image Specialists, Inc., 478 F.Supp.2d 993, 1000 (S.D. Ohio 2007). Such conduct would impermissibly interfere with the employee's rights under the FMLA. See Killian v. Yorozu Automotive Tenn., Inc., 454 F.3d 549, 555-56 (6th Cir. 2006); Harrington at *7(citing McClain, supra).

If CallTech's demand for a doctor's note was not a request for recertification, then what was it? As far as the Court can tell, there is no provision in the FMLA or its implementing regulations that specifically governs an employer's request for a doctor's note rather than a request for a certification or recertification. The regulations do provide that if CallTech needed more information concerning the absences in question, it had a duty first to obtain such information directly from Ms. Smith, not her physician, because she was not incapacitated. See Barrett v. Detroit Heading, LLC, 311 Fed.App'x 779, 790-91 (6th Cir. 2009) (citing 29 C.F.R. §825.301(a)). If CallTech was still unsatisfied after making further inquiry of Ms. Smith, it could then have requested from her health care provider a medical recertification under §825.308. See Brenneman v. MedCentral Health Sys., 366 F.3d 412, 422 (6th Cir. 2004)(citing 29 U.S.C. §2613(a)). In requesting such a certification, an employer can demand all of the information set forth in 29 U.S.C. §825.306 or something less. See Marrero v. Camden County Bd. Of Social Services, 164 F.Supp.2d 455, 466 (D.N.J. 2001). The question, which the Marrero court answered affirmatively, but which this Court need not resolve, is whether the employer would still have to abide by the fifteen-day requirement if it merely asked for a doctor's note to verify that the absences were related to the employee's FMLA-qualifying condition.

13

CallTech was clearly entitled to some form of medical documentation for Ms. Smith's absences even though she had been approved for intermittent FMLA leave for her depression and had verbally informed her supervisor that her absences were related to this condition. Cf. Aubuchon v. Knauf Fiberglass GmbH, 359 F.3d 950, 953 (7th Cir. 2004)(note from obstetrician indicating that employee's wife was having complications would have been sufficient to trigger employer's duty to determine whether requested leave was covered by FMLA). Section 2913(a) of the FMLA, however, requires only that the employee provide medical documentation to the employer in a timely manner. See Richardson v. CVS Corp., 207 F.Supp.2d 733, 740 (E.D. Tenn. 2001). Similarly, where leave is unforeseeable, "[t]he employee will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation." 29 C.F.R. §825.303(b). Thus, if not fifteen days, the employer still must be given a reasonable amount of time to provide the medical documentation requested.

In this case, CallTech requested the doctor's note(s) on May 28, 2007, and gave Ms. Smith only three calendar days to comply. While CallTech may not have been required to give Ms. Smith fifteen days to comply with its request, it did have to provide her a reasonable amount of time under the exigencies of the situation to obtain any notes from her doctor. For example in Richardson, the district found that a nine-day delay by the employee in providing medical documentation was not unreasonable. 207 F.Supp.2d at 740. Although questions concerning the reasonableness of an employer's notice are ordinarily for the jury, see Marrero, 164 F.Supp.2d at 466 n.9, given the coordinated effort necessary to schedule a doctor's appointment and/or to obtain written documentation from a doctor, and from the totality of the circumstances indicated in the summary

judgment record, the Court finds that allowing Ms. Smith only three days to obtain medical documentation for her absences was unreasonable as a matter of law.

The fact that Ms. Smith was aware that under CallTech's attendance policies she was expected to provide a doctor's note for all instances in which she requested unplanned sick leave, whether related to her FMLA condition or not, does not excuse CallTech's conduct. See id. at 466 (even if policies in employee handbook sufficiently informed plaintiff that a doctor's certification would be required, defendants still needed to inform plaintiff that she had fifteen days to comply). The Department of Labor's conclusion that an employer cannot deny FMLA leave on the basis that the employee did not comply with internal procedures as long as "the employee gives timely verbal or other notice," is consistent with the purposes of the FMLA. Cavin, 346 F.3d at 722 (quoting 29 C.F.R. §825.302(d)). Accordingly, any adverse employment action, e.g., termination, that is affected by such considerations is actionable under the FMLA. Id. at 726.

IV.

Based on the foregoing reasons, CallTech's motion for summary judgment on plaintiff's remaining cause of action (#55) is denied. Ms. Smith's motion for a determination that CallTech's system of verification, as applied to her, violated the Family Medical Leave Act (#54) is granted. A trial on all remaining issues relative to Count I of the amended complaint shall be held as soon as the Court's schedule permits.

/s/ Terence P. Kemp
United States Magistrate Judge